United States v. Mack and the United States v. Ellison, 2788 and 23881, respectively. Counsel, for Mr. Mack, and I understand that you've not reserved any time for rebuttal. Yes, sir. Yes, your honor. Good morning, your honors. May it please the court. My name is Jillian Harrington, and I represent Mr. Alger Maya Mack on this direct appeal. I did not represent Mr. Mack in the district court below. As your honors are aware, we raised three substantive issues in Mr. Mack's appellant's brief. The first issue was whether or not the government proved Mr. Mack's guilt beyond a reasonable doubt of the two charges of which he was convicted. The second being whether the prosecutor and the district court's comments resulted in an unfair trial for Mr. Mack. And the third is whether or not he was denied his constitutional right to effective assistance of trial counsel as a result of a couple of errors that his trial attorney made. I'd like to begin with point one, which is Mr. Mack's claim that the government failed to prove his guilt beyond a reasonable doubt, beginning with count one, which charged Mr. Mack with the racketeering conspiracy. To prove this charge, the government, of course, had to prove that there was an enterprise. We did not argue that there was that they did not meet that enterprise, which the government called the Nine Tray Gangsta Bloods. The problem with the charge is that the government failed to prove beyond a reasonable doubt that the conduct that was charged here, the predicates that Mr. Mack was charged with being a part of, were related to the Nine Tray Gangsta Bloods. The Nine Tray Gangsta Bloods is a very large organization, nationwide part of the blood, the National Bloods Organization, and there are members all across the country. And in order to prove Mr. Mack's guilt of this charge, they needed to prove that there were at least two predicates within the last 10 years. And they must, the difficult part here is that they must prove that those predicates had a nexus to the Nine Tray Gangsta Bloods. They chose that that's what they charged. As I said, we're not arguing that there was no enterprise, clearly there was. The cooperators explained that the Nine Tray Gangsta Bloods is broken up into all of these, they call them lineups. There are street lineups, there are prison lineups, and these have their own hierarchical structures. They have godfathers, they have five-star generals, all different types of generals. They call them the low O2O, the high O2O. And Mr. Mack, there was testimony about, the testimony of the trial was mainly about this one, which was called the murder line. And that is where the government's evidence was focused. According to the two cooperators, who of course admitted on the stand that they lied about all sorts of things throughout this prosecution, according to them, Mr. Mack was not in that lineup. He was not part of the murder lineup, and in fact, he didn't get along with the people who were in the murder. If I may, if I may just ask you to specify, I mean, I think what you are asking this court to do is figure out where we draw lines between when something is inside the conspiracy and when it's out. I'm wondering if you can tell us how you think those lines should be drawn, because certainly you agree that many of our precedents and all the cases that are in the circuit consider the fact that there's a little bit of fluidity going back and forth between these things. So where do you think the lines get drawn? Absolutely, Your Honor, and I think you said it a little more cogently than I did. The line has to be drawn on a case-by-case basis, because it all depends on the government's proof. And the government's proof here, and indeed the district court recognized that there was a little bit of an issue here, or a lot a bit of an issue here, when he started, I believe it was at a sidebar, when he mentioned that there were multiple conspiracies going on here. We have the nitrate gangsta bloods, and then we might have a separate drug conspiracy between Mr. Mack and maybe one of the people in the murder line, cooperator Cruz. So the problem is that, yes, there has to be some fluidity, and it has to be on a case-by-case basis, but it can't possibly be the way that it was for every single thing that every member of this humongous group does. What was the charge? I'm sorry? What was the jury instruction relating to what the jury, how the jury was supposed to assess this line? Well, they were given this standard RICO conspiracy, but then for count six, which is the narcotics conspiracy, the court instructed that the conspiracy has to be the nitrate gangsta bloods, and can't be some other random conspiracy. So that is the problem, was that the government, and we contend, failed to make that connection, that the activities that Mr. Mack was allegedly engaged in, or what the cooperator said that he was engaged in, were part of the nitrate gangsta bloods enterprise, other than some conspiracy that he may have been engaged in on his own to commit these crimes. Why couldn't the jury properly charge, make that determination based on the evidence that was there? Well, this is another, this kind of leads into another issue that we raised. That's correct, but I'm sticking to this, to the issue that you're raising here. Yeah, well, because they weren't given the full instruction to inform them that they could find a separate conspiracy, which would mean he was not guilty of these two crimes. Was that a proposed charge? No, and that's why it's raised as an effective assistance of counsel, because it was not proposed, even though the district court did alert. In fact, he kind of went at the government at the trial saying, I don't understand, basically. I have it quoted. So usually, so you're getting to this ineffective assistance of counsel issue. Usually, we channel that into a 2255 proceeding. Why don't we do that here? Yes, your honor, I raised it mainly in an abundance of caution. I'm not saying that it couldn't be raised there, but generally, issues that are ineffective assistance of counsel that appear on the record would need to be addressed in this court. So the district court alerted the attorney to this. He went after the government for not making it clear, and he went after the government for not asking for a multiple conspiracies charge, and in effect, and counsel stood there, listened to it, and never asked for one. So he was alerted to the error or the omission, and he was alerted to the fact that the district court was taking note of this and did nothing but stand there. So can I ask, wasn't the fact that Mack was in his own line, but it's got the same hierarchy, the appointment process was by the prison line. Isn't that evidence of a larger non-trade conspiracy? Well, there's no doubt that that enterprise exists. We don't argue that, but that's why in our brief, we analogized it to the hub-and-spoke type of conspiracy, which is where if we say that the non-trade gangsta bloods is the hub, like you have on a wheel, and then you have separate spokes. Right, and I found that analogy useful, but limited in that it doesn't account for the fact that there are other facts, like the funds generated were used to support the overall non-trade goal, the fact that the lines were working together. I mean, certainly your position can't be that just because they were different lines, they are per se different conspiracies, right? Per se, no, I would not say that, because I think there are cases where the government could introduce more proof and evidence, but in fact the evidence here was that, according to these two cooperators, was that Mr. Mack was going after the heads of these other lines. So to say that they were working together for the common goal? No, that is a good fact. The fact, I mean, I think the strongest argument I think you have is that somebody was trying to beat, but we have cases though that say the nature of these kinds of enterprises is all about trying to be in charge of it. So it can't be just because they're beefing or they're fighting or someone is trying to take over, that means that there's not an enterprise. So I'm hoping you can tell me, like, facts you think help us draw the lines between these admittedly, by your own admission, fluid events? Yeah, I think there has to be, if we go back to the hub and spoke kind of analogy, there has to be a rim that goes around it. There has to be a connection, some proof that they are all working together for this common goal. There's no proof that Mr. Mack was engaging in this shooting at one of the leaders of the murder line and the robbery of the other. There's no proof that he was doing that to gain some kind of advantage or to take over the murder line. There's no proof of that. The only proof was that he was part of this wavy line. We don't need, there was no evidence even of who else was in this wavy line with him. He was kind of this character that they were claiming was working, I don't know, on his own. Maybe he did have people. There's no proof of that. Well, he tried to recruit crews, right? So there's some fact. I mean, I'm sympathetic to the argument that you're making where I'm struggling is how do we, who has to write an opinion, draw lines and based on what facts? And so what are we supposed to say, this is where the conspiracy ends and this is where it begins, and these are the facts that put it in the rim, and these are the facts that put it out of the rim. Unfortunately, I don't think that there is a way to do that because these are such fact-specific cases, and I think that would make it very difficult. But as Your Honor pointed out, there was evidence by crews that they had these drug deals. But the argument that we... And of course, part of your response, it seems to me, wouldn't necessarily be that you are arguing the lack of facts, the absence of facts, right? So there are no facts one way or the other. That would inure to your client's benefit. Is that correct? Absolutely, Your Honor. That nexus, and that's the word that is used, is that nexus between his conduct and the Nine Trey Gangsta Bloods organization. Not necessarily Nine Trey Gangsta Bloods members because we all know that you can't be accused of a crime just because you know these people. And yes, he was allegedly having some drug deals with crews. Those drug deals started before, and the evidence was actually... The testimony was from crews was that he was doing business with him and his partner, Mr. Raffone, and that they had a separate stash house. And there was no evidence that this was all related to the Nine Trey Gangsta Bloods. So where I started was, and I know I've gone over my time, was that we know there's a Nine Trey Gangsta Bloods. The evidence that the government failed to prove was that Mr. Mack's conduct, what he was doing, what he was engaging in, the shootings, the shooting that is alleged, the robbery that is alleged, the narcotics conspiracy that is alleged in Count Six. The evidence that the government put forth simply does not make that nexus between Mr. Mack and the Nine Trey Gangsta Bloods. I know that I'm over my time. We'll hear from the government. Thank you very much. Thank you. Thank you, Your Honors. If you have no further questions, I'll rely on my brief. Counsel for the government. Thank you, Your Honors, and may it please the court. My name is Michael Longyear. I'm an assistant United States Attorney in the Southern District of New York. I represent- I'm sorry. I'm sorry. We actually have Mr. Sandoval. I apologize. I thought we were going to go back and forth, but that's- No, no, no. I'll wait my turn. I think maybe- If so, it would have been ten minutes. Maybe it's better if you hear both, and then you can respond to both. That would be a little bit more efficient. May it please the court, Your Honor. Thank you for allowing me to take my time here. My name is Andrew St. Laurent, and I represent Anthony Ellison, who is one of the two defendant appellants arguing their appeals in this case this morning. I have raised two- I've raised a number of arguments in my brief. I want to focus on just two of those arguments today. The first of those arguments is the decision by the district court to prevent Mr. Ellison's trial counsel from recalling the government's primary witness, Daniel Hernandez, in the defense's own case. And as trial counsel made clear before the judge, the purpose of recalling Mr. Hernandez was to be able to effectively cross-examine him. With the videotape of an interview that Mr. Hernandez had given to radio- Hadn't that happened in the direct? How did that- Hadn't that happened? I mean, hadn't this issue been treaded over prior to the effort to recall the witness? Yes, Your Honor. What trial counsel said to the trial judge when they were trying to call Mr. Hernandez was that they were unable to technically get access to the videotape in such a way to effectively impeach Mr. Hernandez with the statements that he had made there. From a practical perspective, and I have made a separate motion to put that video in front of the court, I understand where trial counsel was struggling. The videotape was approximately 90 minutes long of an interview. Mr. Hernandez' testimony both before the jury and his interview with Ms. Martinez were rambling, difficult to follow, and exactly the kind of material that it would be hard for trial counsel to, so to speak, on the fly, organize into an effective cross-examination. Now, Your Honor, I have made separately a motion based on ineffective assistance of counsel, an argument based on ineffective assistance of counsel here. But I believe the real error here, Your Honor, was the analysis, or rather the lack of analysis, by the trial judge in deciding to exclude Mr. Hernandez from being called in the defense case. Wait a minute. I guess part of what, even if we were to agree that it was probative and material, at this point wouldn't it have been cumulative? I mean, didn't Hernandez already admit that he was lying, that he was lying a lot? Hadn't he already, to my colleague's point, been explored about the lying? And I guess what I'm struggling with is we can probably agree that there might have been more impeachment that could have been done, but we would also not dispute that a trial court has the ability to move the trial along, to be weighing pros and cons of things. And why was this decision to not allow further impeachment so egregious that we need to reverse? Your Honor, that's exactly the right question, and the question that the trial judge should have put to defense counsel at the moment when. Trial counsel, you want to offer this videotape. What else is on the tape that's going to change this jury's view of this witness? And that's the critical element here, Your Honor. And I have spent. That's not what it looked like. Can you cite me to where the trial was in the record? I felt like it was a little bit similar to that. I felt he was like, wait a minute. We already did this. You had this opportunity. It was made publicly. What else was there? And I felt the response was simply, you know, we want to do it directly with the video, not there's something you don't know yet or something we haven't explored. Well, Your Honor, but I think, yes, and I can direct you to the parts of the trial record. In my appendix, it's 1345. 1346. And 1346 is where that goes on. And if you look at the responses that trial counsel makes, it's clear that there is additional information that he is trying to get into evidence that would impeach Hernandez and that he was not able to get into. And what the trial judge focused on was the failure of trial counsel to do that in the course of his cross-examination during the government's case in chief. What the trial judge should have been focused on is what was the probative material in that videotape that the jury was not able to consider and it would be able to consider. So this may go to your ineffective assistance of counsel issue. That's sort of a separate thing. It also goes to the Rule 403 analysis and the Rule 611A analysis. The reason proffered by counsel is not the reason that you're articulating there. Your Honor, if I may, I believe it is implied. I believe that the trial counsel was trying to explain, perhaps ineffectively, that there was material that would have been able to effectively impeach Hernandez that he was not able to do. And that is what he said to the court. He did not do what I did. Your Honor, I put before this court a fairly extensive analysis of the 11 separate points of impeachment in that videotape. Three of them, as the government argues, trial counsel was able to get out and was able to use during the course of its cross-examination of Mr. Hernandez. But the trial court needs to consider all of that potential probative material. Does it need to consider it if it's not presented with all of those options? That's sort of the question. That's why it's a little bit difficult for me, but you can help me. I will do my best. Does this entangle the substance from the ineffective assistance of counsel issue that you've raised, apparently, with the government? Yes, Your Honor. So in determining the admissibility, just to step back from the whole thing. In determining the admissibility of any piece of evidence, the district court has to go through the analyses that are laid out by the federal rules of evidence. When a party tries to offer evidence in front of the court, it is the responsibility of the judge in the first instance to undergo that balancing analysis, whether it's under 403 or 611A. So did trial counsel do everything he could have done to preserve this issue? No, Your Honor. Did he make the most effective argument before Judge Meyermeyer? He did not. But he did enough to put this material in front of the court in such a way that the court should have turned on that analytical machine under the different rules of evidence and made the correct analysis and made the correct decision as to the admissibility of this tape. I will move on briefly to my second argument, which is the statement that was admitted as being in furtherance of the conspiracy with regards to Count 5, the slashing at Mark Hovde. As is laid out in the brief, the government elicited from, again, Mr. Hernandez a statement that he had been told by another member of 9th Ray Guns that Guns had attempted to murder Mr. Ellison and that in response to that attempt to murder Mr. Ellison, Ellison had retaliated against another person who Mr. Hernandez later identified from a photograph. And this is another rule of evidence decision, and the question is, was that statement properly admitted as being in furtherance of a conspiracy? Now, there was a conspiracy. 9th Ray was established as an ongoing enterprise. I think the government's evidence was sufficient to show that Mr. Ellison, Guns, and Mr. Hernandez were all members of that conspiracy. But where that decision to admit that evidence falls down is that more is required for a statement to be admitted in furtherance of a conspiracy. And if you'll allow me, Your Honor, I am a little over time. I'm just going to read from Judge LaValle's opinion in U.S. v. RUSA, which I think states this better than I could. The citation is 302 F. 3rd at 46. Admissibility depends on the nature of the statement offered, in particular, what objective it sought to advance, and whether the defendant was jointly engaged with a declarant in a conspiracy seeking that objective. So it's not only that they have to be participants in the same conspiracy. It's that the statement has to further an objective that is specifically shared between the defendant and the declarant. That's United States v. RUSA. It's also United States v. Gigante. If there are no further questions, I will wait for the balance of my time. Thank you. Thank you, Your Honor. All right, Mr. Longyear. Now is your time. Good morning again, Your Honors. My name is Michael Longyear. I'm an assistant United States attorney in the Southern District of New York. I represent the United States here, as I did in the proceedings below. I guess to begin, I can start where we left off with Mr. Ellison with respect to recalling Mr. Hernandez. Judge Engelbart did not err in preventing the recall of Mr. Hernandez. During the cross-examination of Mr. Hernandez, well, I guess taking a step back, on direct examination, Hernandez admitted that in several interviews given after the kidnapping and robbery, he lied, and he identified points where he lied, that he did not identify who the robbers were, the value of the jewelry that was taken, et cetera. During cross-examination, defense counsel marked as an exhibit the transcript of the interview that's at issue here in the video, and through several points, cross-examined Mr. Hernandez about answers he gave in that interview, and almost every time, Mr. Hernandez either didn't recall the answer and was refreshed with the transcript, or admitted, yes, I lied, that was incorrect. And so to Your Honor's point, it was cumulative, I think, in order to call him to ask him more questions that he very freely admitted were lies when those questions were put to him by defense counsel. This also, Appellant's argument also presupposes that this video would be admissible, and I think it's far from clear that it would be admissible. As Mr. Hernandez repeatedly did on cross-examination, he, when confronted, admitted that the answers he gave in the interview were lies, that he admitted that they were wrong. And so that would preclude admission of extrinsic evidence to impeach him. There's nothing to impeach him about. He's admitting that they were lies. And so I think the cross-examination, defense counsel got across the point that he lied. That was fodder for closing summation. And so I think Judge Ingemar was well within his discretion to prevent the recall of a high-profile cooperating witness back into the court for more of the same. Turning to, unless there are other questions, I'll turn to Mr. Mack's arguments here. I think there was sufficient evidence to support, overwhelming evidence to support, the convictions here of both racketeering and narcotics conspiracy. I'm so sorry. I just, I was thinking about something and that I should have stopped you earlier. You mentioned that he was well within his discretion. Should we be looking at this de novo because of the confrontation clause issue? No, you're right. I think this is, I think the confrontation clause was, he did cross-examine him. He testified. Sorry? He testified. He testified. Correct. He was crossing him. He was testifying. I think at most it's a harmless error analysis. So you don't think that there's any question about the standard of review? No, Your Honor. Turning to Mr. Mack, I think there was overwhelming evidence to support the conviction here. You had two cooperating witnesses, Daniel Hernandez and Christian Cruz, who testified about Mack's position in the gang, membership in the gang, drug dealing in the gang, violence. His Instagram account and messages that were admitted into evidence detailed his membership, his reporting to others, his reference to people in the prison lineup. I think, Judge Perez, your question at the beginning, I think, was spot on. Mack tried to recruit Cruz into the gang. Christian Cruz was the gang's drug supplier. And he supplied, as we were talking about these different lineups or lines, he supplied both lines. He supplied Algebrai Mack. He supplied members of the other line, Roland Martin, Cofano Jordan. And, in fact, as we can see that we know that this is one conspiracy, there is structure that when Cruz was upset that Mack was not paying him for the drugs that he supplied, who did he report to, who did he complain to? Roland Martin, who was a higher ranking member of the gang, and said that this isn't right and that Roland Martin had ties to and connections with those in the prison lineup. And so I think this is not some separate multiple conspiracy. This is one gang, dysfunctional, yes, but they were a common enterprise with common goals that included acts of violence, that included drug dealing. Can you help me with some of the facts that I'm trying to figure out where they fit into this? What about the fact that Mack and Cruz had narcotics transactions before Cruz actually joined Nine Tray? What am I supposed to make of that? I think that is background to their relationship and clearly informs why Mack saw Christian Cruz as a valuable asset to the gang. But if they had a relationship before, then why isn't everything that followed after that an extension of that relationship as opposed to part of a conspiracy? Like, I'm needing help drawing some of these lines. I mean, surely mere association won't be enough, right? And certainly not engaging in other criminal enterprises will be enough. How do we wrap something around this? Yeah, sure. I think no question Christian Cruz was a drug dealer prior to his membership in the Nine Tray. He was recruited into it and made a high ranking member by Jamel Jones into the gang. But then as part of his membership, he was supplying other members of Nine Tray, including Aljamiah Mack, after his membership into Nine Tray, was willing to give valuable drugs on consignment to Mack. And this was all in service of, you know, Mack being a leader in the gang, giving him the benefit of the doubt. And frankly, when he complains to Roland Martin, there's really no acts of violence taken against Mack because of their common membership in the gang, that this is gang business. I'm going to report it to other members of the gang and we will settle this as members of the gang. And so I think there's commonality there. I think it is clear that they are members of this racketeering conspiracy. Didn't he rob Roland Martin? I mean, it's very hard, I think, to say that you're part of the same conspiracy when you are robbing the person that is supposedly the head of the conspiracy, right? Again, Your Honor, agree that it's dysfunctional. No question there. But I think the court's opinions in this area are clear that rivalry and dissension among members of the gang, especially, I mean, there are several cases of the Colombo Wars. The rivalry and dissension, I think, could be evidence that they are members of the conspiracy. They're jockeying for position. That is clearly what happened here. And, in fact, after the robbery of Roland Martin, Al-Jarrah might post a video to Instagram, and it's to promote what he did, and it is all of this dominance and jockeying for position within the gang as to— As a matter of the admitted evidence at trial, at a trial, at what point do we say that the jury could not have found that whatever the acts were in dissension were part of or in furtherance of the conspiracy? So what's that outer limit? I don't know that we've got to deal with it here, but maybe that's what— Your Honor, but we actually have the benefit of the record here, right? We learned, and it was through the messages in Al-Jarrah Mack's Instagram, that after he robbed Roland Martin, which he thought was part of the jockey for position, that members of the prison lineup were so upset, they liked Roland Martin, that they kicked Mack out of the gang. So that was conceded, right? By April 2018, Mack is no longer a member of NITRE. Conversely, with Anthony Ellison, he robbed Daniel Hernandez, kidnapped and robbed him in July of 2018, and there were shootouts in October of 2018, yet he is still a member of the gang. And the reason we know that is because after Ellison was arrested in November of 2018, there is a recorded call between Christian Cruz and Jamel Jones, Jamel Jones being the godfather of the street lineup, saying, hey, now that he's arrested, I want his position as high O2O of the street, right? And Cruz testified that the way that the rules worked is that if you were arrested, you were removed from the street lineup and then you go into the prison lineup, so you lose your position. So we know, based on a recorded call between, you know, at this point, Cruz is a confidential source for the government, but with the godfather, that even despite that intra-gang violence against each other, that wasn't enough to kick Ellison out of the gang. He was still a member of the gang, and he was still a high-ranking member of the gang. And so I think the jury had that evidence. They saw the dissension but still understood, based on the evidence and the testimony of Hernandez and Cruz, as this is par for the course within this gang, and he was still a member because this was— And there was no objection to a jury instruction or no requests for a jury instruction that might have shed further light on— No, no, there wasn't. Counsel was right. It was a standard racketeering instruction in terms of the ineffectiveness of multiple conspiracies. I think that is a matter left to maybe the discretion of trial counsels to not seeking one in terms of strategy of telling a jury, well, he may be guilty of one conspiracy, just not this one. There was plenty to go off of in terms of attacking the credibility of the cooperators and the other evidence, but that is, I think, a matter of trial strategy. With respect to Mack, at least, when did Mack become part of the conspiracy? Is it when he joined—I mean, where— I'm still troubled by the fact that they had a non-conspiracy relationship, which you concede, and I want to know when it became part of the conspiracy. When did Mack become—so Mack had always been, at least based on the testimony, had been a longstanding member of 9TRE. But he had admitted to doing transactions, drug transactions, before he became a member, right? Yes, he admitted to doing transactions with Christian Cruz. Right, so when did the conspiracy start? Maybe that will help me try and figure out the lines. I mean, we allege, the indictment alleges that the racketeering enterprise, the racketeering conspiracy, the 1962 conspiracy, started to enter about 2013 and went until they were arrested in November of 2018. You know, obviously members come and go. During that time, I think the testimony was that Algebraier Mack was a member of the conspiracy through that entire time period. Christian Cruz comes in later, in around 2015, 2016. Daniel Hernandez comes in later, at the end of 2017. And so, you know, yes, I think Mack and Cruz had this relationship that predated Cruz's membership in the gang, but that relationship continued and I think was part and parcel and in furtherance of the 9TRE conspiracy as evidenced by, again, as I mentioned earlier, actions that Cruz took when he gave drug-dealing consignment, who he went to, who he complained to. How do we view that? So let's just take this as an example. You have two people who are separately engaged in a separate conspiracy predating, I guess here, 2015. And is it that when Cruz joins the larger conspiracy in 2015, that that first conspiracy between himself and Mr. Mack almost merged into the larger Amigo conspiracy? How do we think about that? We could have charged, I think it's entirely proper. We could have charged a separate conspiracy that predated. We could have charged Cruz and Mack as members of a separate narcotics conspiracy. I think that is absolutely true. But I think that Mack and Cruz are members of the gang within the conspiracy period that we charged and they took action in furtherance of that conspiracy. They did drug transactions as part of that conspiracy in furtherance of the 9TRE enterprise. And I think that going to the colloquy between Judge Engelmeyer and one of my colleagues at the sidebar, I think we had said that there could be multiple conspiracies and I think after pushback from the court, came back and agreed that no, no, part and parcel, it's the same conspiracy. These are just separate charges of the same, as we do all the time. We can charge multiple crimes based on similar conduct. And so it is part of the 9TRE conspiracy. It is also a narcotics conspiracy, but with the same actors and that's how it was charged. Thank you very much. Thank you, Your Honors. Unless there's further questions, we rest on our submissions and ask that the judgment of commissions be affirmed. So we'll hear from Counsel for Ellison. Thank you, Your Honor. I just want to respond to some of the points that the government made in response to my argument. First, with regards to the admissibility of the videotape, I mean the whole problem here, Your Honor, is that the videotape as a whole was not admissible. That was the technical issue. Defense counsel had to obtain a statement from Mr. Hernandez, his testimony that would be inconsistent, and then impeach with the video to the extent that it was necessary, which was the complicating factor. To go to Judge Lopez's question about the standard of review. It's Bettis, not Lopez. Sorry, Your Honor. The court has ruled that you do not get a heightened standard of review in a constitutional rights case. But in this case, because of the lack of the analysis by the district court under the Figueroa case, there is a heightened standard of review that's applicable to the evidentiary error here. And I would submit that with regards to the exclusion of the Hernandez videotape, the interview with Martinez, that is the standard that should be applied here. With regards to what defense counsel was able to elicit in the absence of the videotape, which goes to the harmless error question here, Hernandez did not admit, and I reviewed the record, obviously, in my submission, and again, while I was waiting, that he did not know, that he had told Angie Martinez that he did not know who had robbed him, which was a critical part of any. Say that again. I'm sorry, Your Honor. It is a little complicated. It's slightly complicated. Defense counsel was able to cross-examine Mr. Hernandez with regards to some of the inconsistent statements from the video and from other things that he had said. However, defense counsel was not able to effectively cross-examine Hernandez with a lot of the other statements, including the fact that Mr. Hernandez had told Angie Martinez during that July 2018 interview that he did not know who had robbed him. And that is something that's clear from the videotape, that defense counsel was not able to effectively cross-examine. When you say, so this is a separate question. Yes, Your Honor. You're continuing to answer my first question. When you say effectively, what do you mean? I mean at all. He was not able to raise that point with Mr. Hernandez. And I know I'm going over my time again, but if I could just, one example, and this is from page 1032 of my appendix. Defense counsel was resorting to these types of questions. This exact question, Your Honors. What else did you lie to Angie Martinez about? That type of open-ended asking the witness to remember his own lies to another person some years prior in the course of a 90-minute interview. I don't think is effective cross-examination. And had trial counsel had the ability to recall Hernandez to use the videotape effectively, I submit that there would have been a different outcome. What about the transcript? Your opposing counsel said that there was a transcript that they could have used. What is the material difference, or what is the prejudicial difference between using the transcript and using the video? From a point of view of impeachment and persuasiveness to a jury, I believe that the videotape would have been far more effective. As a practical matter, it appears the trial counsel had the same difficulties using the transcript that he had using the video, which is he was not able to identify the relevant inconsistent statements quickly enough to be able to- For the judge. For the judge. And, again, I'm going over my time. I mean, I feel for trial counsel here. I think he was trying to do a good job for his client, and this was a very difficult witness. The record is replete of instances where the trial judge is trying to assist questioners and Mr. Hernandez to stay focused and to answer the questions properly. It was a very difficult situation for trial counsel to try to address on the fly. There were many things that should have been done differently by trial counsel, but I do think given the opportunity in the defense case to properly impeach Mr. Hernandez, there could have been a different result in this case. Thank you very much. My apologies again, Your Honor.